# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| LISA G. GOBER, | ) |
| Claimant, | ) ) ) |
| v. | ) Case No. CV403-040 |
| MICHAEL J. ASTRUE, *Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

On March 5, 2003, Claimant Lisa Gober filed a complaint with this Court appealing the Social Security Commissioner's denial of her application for disability benefits. (Doc. 1.) That case was remanded at the Commissioner's request on May 24, 2004. (Docs. 8 & 9.) On August 24, 2007, claimant moved to reopen the case, (Doc. 10), and that motion was granted. (Doc. 11.) For the reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

I. BACKGROUND

Claimant is a forty-nine-year-old female who completed two years of college, receiving an associate's degree. (Tr. 47A, 72.) She worked as a CAD operator and a drafter at various jobs from 1990 to 2000. (Tr. 67, 75-79.) On December 22, 2000, claimant applied for disability benefits, alleging that she became disabled on August 24, 2000. (Tr. 51.) She alleges that her disability arises from bilateral carpal tunnel syndrome, severe and inoperable chronic neck pain, and depression. (Doc. 20 at 3.)

The Social Security Commissioner denied claimant's application, first on March 8, 2001, and again upon reconsideration on September 27, 2001. (Tr. 62, 56.) An Administrative Law Judge ("ALJ") held a hearing on April 11, 2002 and issued a decision on August 28, 2002, denying claimant's benefits application. (Tr. 13-21.) After the appeals council rejected claimant's request for review, the ALJ's decision became the final decision of the Commissioner. (Tr. 6.) Claimant then filed a complaint in this Court challenging the ALJ's determination. (Doc. 1.) On May 24, 2004, the Commissioner moved to remand the case for further consideration under 42 U.S.C. § 405(g) sentence six. (Doc. 8.) That motion was granted. (Doc. 9.) The ALJ once again denied

claimant's benefits application on December 15, 2005, (Tr. 339-58), and on January 7, 2007, the appeals counsel denied claimant's request for review. (Tr. 319-20.) Consequently, claimant moved to reopen her case on August 24, 2007, and her request was granted. (Docs. 10 & 11.)

## II. ANALYSIS

Affirmance of the ALJ's decision is mandatory if the ALJ's conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." Id. at 1158-1159. The substitution of this

Court's judgment for that of the Commissioner is not allowed. Barnes v. Sullivan, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether claimant has met his burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, claimant must prove that she has not engaged in substantial gainful activity. Jones, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. Id. Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. Id. If not, she must advance to step four, which requires her to prove an inability to perform past relevant work. Id. If she cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." Id.

In the ALJ's second decision, entered after the remand, he found that claimant satisfied step one of the five-step analysis because she had

not engaged in substantial gainful activity at any time relevant to the decision. (Tr. 341.) Regarding step two, the ALJ concluded that the medical evidence indicated that claimant's depression, bilateral carpal tunnel syndrome, and cervical disc disease were "severe" within the meaning of the regulations. (Tr. 351.) At step three, however, the ALJ held that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) At steps four and five, the ALJ determined that claimant could not perform her past relevant work but could perform light work, which is available in sufficient numbers in the national economy. (Tr. 354-55.) Accordingly, he found that claimant was not disabled under the Act. (Tr. 355-56.)

Claimant contends that the ALJ's analysis was not supported by substantial evidence because he failed to: (1) consider the combination of her impairments, (2) assign proper weight to her subjective complaints, and (3) make a proper residual functional capacity determination. (Doc. 20 at 1-2.)

### A. Combination of Impairments

Claimant contends that the ALJ failed to consider all of her impairments in combination. (Doc. 20 at 6.) Specifically, she alleges that the ALJ failed to consider her fibromyalgia, chronic pain syndrome, and lower back pain (as opposed to her cervical pain).[1] (Id.)

In cases where a claimant has alleged several impairments, the ALJ must consider the impairments in combination and determine whether the combined impairments render the claimant disabled. 20 C.F.R. § 404.1523; see also Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). Here, claimant never explicitly alleged that she was disabled due to fibromyalgia, chronic pain syndrome, or lower back pain in her Social Security Disability Application forms and questionnaires, (Tr. 66, 108, 119, 404, 429-30), requests for hearings, (Tr. 391, 454-62), requests for reconsideration and review, (Tr. 30, 87, 292-95, 322-26, 448-51), or at either of the

---

[1] The ALJ only considered claimant's bilateral carpal tunnel syndrome, cervical disc disease, and depression, and found that claimant's impairments are "severe" but not severe enough either singly or in combination to match a listed impairment. (Tr. 351.)

transcribed hearings. (Tr. 298-318, 739-47.)[2] In fact, at the first hearing, when specifically asked if she suffered from any medical conditions other than her carpal tunnel and neck and shoulder pain, she responded that she did not. (Tr. 301.) Claimant briefly mentioned her lower back pain in a disability report, but she still listed only carpal tunnel and a bulging disc in her neck as the "illnesses, injuries, or conditions that limit[ed]

---

[2] There were several hearings in this case, but only two were transcribed. The first occurred on April 11, 2002, (Tr. 296-318), and the second on September 29, 2005. (Tr. 737-747.) During the first hearing, claimant testified that she went shopping, but could not lift her daughter. (Tr. 300.) She stated that her medication made it difficult for her to concentrate. (Id.) She testified that she only has about thirty percent of her prior strength in her right wrist, after the carpal tunnel surgery. (Tr. 301.) She stopped working on July 28, 2000, but she testified that her disability began on August 24, 2000, the day she was in a car accident. (Tr. 305.) She worked for ten days in November 2000 and attempted to return again in February 2001. (Tr. 305.) She managed 10 days in November 2000 and a month in 2001. (Id.) She testified that she does not cook full meals, rarely irons, and occasionally washes dishes. (Tr. 307.) She admitted to sweeping, mopping, vacuuming, shopping, making her bed, and driving. (Tr. 307-08.) But she stated that she does not go for walks and is not active socially, or in Synagogue. (Id.) She stated that she does not do any yard work, but she helps her daughter to bathe and dress. (Tr. 309.) She likes to sew, but she can only do so for short periods of time. (Id.) She stated that she does not sleep well because of pain. (Id.) The heaviest thing she could lift was a gallon of milk. (Tr. 311.) She stated that she can only sit for thirty minutes to two hours, (id.), that her pain typically is at a 9 on a scale of 1 to 10, (Tr. 313), and that she has difficulty paying attention. (Tr. 315-16.)

At the second transcribed hearing, she testified that her right hand went numb faster when performing small tasks. (Tr. 740.) She admitted that she does not have any difficulty driving; she just relies heavily on her mirrors, and she has a new padded steering wheel that does not require a tight grip. (Tr. 740.) A vocational expert stated that with claimant's carpal tunnel, she could not be expected to return to her past work but she could take on a job as a night guard or surveillance system monitor. (Tr. 744.) Adding in occasional flexing or extension or turning of the neck, his answer did not change. (Tr. 745.) If she were to take occasional unplanned breaks, however, she would most likely not be able to perform any job that the vocational expert could think of. (Id.)

[her] ability to work." (Tr. 430.) Her failure to actually allege that these conditions were disabling is fatal to her claim.[3] See Street v. Barnhart, 133 F. App'x 621, 627 (11th Cir. 2005) (noting that an ALJ is not required to investigate claims that have not been presented in the application for benefits or offered at the ALJ's hearing).

Moreover, nothing in the record would have put the ALJ on notice that the conditions are disabling. The diagnosis of fibromyalgia did not appear in the record until claimant visited Dr. Sauers, her internist, in February 2004. (Tr. 710.) In May 2004, it was again listed, but it was not mentioned in any of her subsequent appointments or anywhere else in the record. (Tr. 708.) Such an evanescent diagnosis surely would not have indicated to the ALJ that fibromyalgia impaired claimant's ability to work. As to claimant's lower back pain, she specifically noted that it was caused by her weight. (Tr. 430.) At the time she filled out the

---

[3] In every appellate case claimant relies upon, the claimant actually alleged an impairment and the ALJ failed to consider it. Vega v. Massanari, 265 F.3d 1214, 1217 (11th Cir. 2001) (claimant applied for disability benefits for chronic fatigue syndrome, but ALJ failed to consider it); Walker, 826 F.2d at 998-1001 (ALJ erred by failing to consider claimant's complaints of pain and other impairments in combination when those complaints were brought to his attention at the hearing); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) ("the ALJ must consider every impairment alleged"). It is unclear what the claimant alleged in Cook v. Barnhart, 347 F. Supp. 2d 1125, 1132 (M.D. Ala. 2004), the only district court case upon which claimant relies.

disability report in 2003, she weighed 178 pounds. (Tr. 429.) Her most recent medical records reveal that she has lost a considerable amount of weight and that the weight loss has substantially reduced her pain.[4] (Tr. 713.) Finally, nothing in the record indicates that claimant's chronic pain syndrome was disabling. It was managed, and her chronic pain appeared to lessen over time. (Id.; Tr. 710.) The record shows that claimant had decreased the use of her pain medications and was doing much better until she injured her ankle in an accident. (Tr. 713 & 710.)

As claimant never alleged that her fibromyalgia, lower back pain, or chronic pain syndrome were disabling and nothing in the record indicates that they impaired her ability to work, the ALJ did not err by failing to specifically address those issues.

B.  **Subjective Complaints**

Claimant next contends that the ALJ failed to assign proper weight to her subjective complaints. (Doc. 20 at 7.) The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant

---

[4] Claimant points to several medical records which she believes demonstrate that her lower back pain acted as an impairment. For instance, she complained of lower back pain to Dr. Sauers in May 2005, but during that appointment she admitted that she had "been doing a lot of work at home," including "pulling up some carpet and pulling up tacks and sticks and putting down vinyl." (Tr. 708.)

9

attempts to establish disability through her own subjective testimony of pain or other symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of: (1) an underlying medical condition, and (2) either (a) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms. Id. at 1223; Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986); Hand v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986); 20 C.F.R. §§ 404.1529 and 416.929. Although "[t]he ALJ must consider the claimant's subjective testimony," Norris v. Heckler, 760 F.2d 1154, 1157 (11th Cir. 1985), the issue of credibility is reserved to the Commissioner. Boyd v. Heckler, 704 F.2d 1207, 1210-1211 (11th Cir. 1983). "[A]n ALJ may properly challenge the credibility of a claimant who asserts he is disabled by subjective complaints." Norris, 760 F.2d at 1157; Smallwood v. Schweiker, 681 F.2d 1349, 1351 (11th Cir. 1982). However, if the ALJ chooses to discredit a claimant's [subjective complaints], he must "articulate 'explicit and adequate' reasons for doing so." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (quoting Cannon v.

Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

Claimant refers to the most recent medical reports from Dr. Sauers, one of her treating physicians, in which he states that claimant suffers from pain and numbness in her hands, has problems holding even small items, and suffers from severe chronic pain and fatigue. (Tr. 715, 713-34.) The ALJ found claimant's subjective complaints to be less than credible for the following reasons:

(1) claimant reported radiculopathy throughout the record, but all four EMG's she underwent revealed no evidence of radiculopathy, and three physicians found no evidence of radiculopathy in their examinations;[5]

(2) claimant reported to Dr. Greenberg that she used her hands regularly for sewing;[6]

---

[5] Drs. Meeks, Greenberg, and Pappas all found no evidence of radiculopathy during their examinations. (Tr. 245-46; 248-49; 271-72.) On May 13, 2002, Dr. Stephen Pappas, a neurologist, provided a consultative examination. (Tr. 271.) He found that claimant "should avoid any activities such [as] repetitive manual work and prolonged typing or keyboard entry that would aggravate the carpal tunnel syndrome." (Id.) He determined that she can lift twenty pounds occasionally and less than ten pounds frequently. (Tr. 278.) He found no limitations on standing or walking. (Id.) He concluded that she can reach, handle, and finger items occasionally, but can constantly feel them. (Tr. 279.) He noted that she should be limited in pushing and pulling, due to her carpal tunnel syndrome. (Id.) He found no other limitations.

[6] Claimant saw Dr. Greenberg concerning her neck pain. (Tr. 248-49.) Both Greenberg and Sauers submitted opinions stating that claimant's subjective complaints were disabling. (Tr. 269, 270.)

(3) an EMG obtained on March 26, 2003, showed that claimant's results were normal with no evidence of neuropathy or radiculopathy, and Dr. Greenberg noted that claimant's "mild" carpal tunnel syndrome had "disappeared;"

(4) claimant alleged subjective weakness in her hands and arms, but evidence of record discounted her allegation;

(5) Dr. Novack, an examining disability consultant, noted that claimant had her chin flexed nearly to her sternum while sitting in his office's lobby but could only flex 25 degrees when under examination, and she was able to maneuver herself well despite her inability to flex her wrist beyond 45 degrees during testing;[7] and

---

[7] Claimant first saw Dr. Steven Novack on May 6, 2002. (Tr. 281.) Dr. Novack found that her spinal condition was unremarkable, with no showing of cervical radiculopathy. (Tr. 282.) He also noted that her right hand had residual effects from a carpal tunnel release, but her grasp was functional. (Id.) Finally, he stated that claimant "would probably have difficulty working a keyboard all day . . . but her physical exam does not disable her from any and all types of work." (Id.) He submitted a medical assessment stating that claimant can lift fifty pounds occasionally and 25 pounds frequently. (Tr. 285.) He noted that she can frequently balance, stoop, crouch, kneel, or crawl, occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (Tr. 286.) He noted that she can occasionally reach, handle, or finger items, but can frequently feel them. (Tr. 286.) He found that claimant's ability to push and pull is limited by her right arm. (Id.) He concluded that she had no environmental restrictions, other than a limitation on exposure to vibration. (Tr. 287.) Finally, he noted that claimant's range of motion and grip strength were mildly restricted. (Tr. 288-89.)

On January 18, 2005, claimant returned to Dr. Novak for another exam. (Tr. 641.) He found that her spinal issues had progressed, but he believed that she magnified her symptoms and he did not believe that she was totally disabled. (Tr. 643.) Specifically, he noted that she drives, but he stated that "I cannot imagine her holding the steering wheel with either hand with the lack of grip strength she demonstrated to me today. I also cannot understand how she can drive a car without having to turn her neck to look in either mirror or turning the wheel to make a turn when all upper extremity movement she states is very painful." (Tr. 643.) Her range of motion was significantly decreased, but he believed the decrease was due to self limitation. (Tr. 644.) Dr. Novak found that she could lift 10 pounds occasionally and 5 pounds frequently. (Tr. 647.) He found that she can occasionally ascend ramps

(6) Dr. Novack specifically noted that he believed claimant magnified her symptoms and self-limited her abilities during her examination.[8]

(Tr. 353-54.) Accordingly, the ALJ found that claimant's subjective allegations were not credible. (Tr. 354.)

Claimant contends that the ALJ failed to give adequate reasons for rejecting her complaints of pain and fatigue. (Doc. 20 at 9.) The ALJ clearly addressed claimant's subjective testimony regarding her pain, as he discussed radiculopathy and Dr. Novack's statement about her ability to maneuver her vehicle despite the fact that she described "all upper extremity movement . . . [as] very painful." (Tr. 354.) Furthermore, claimant's allegations of fatigue were addressed by the ALJ's reference to

---

and stairs, balance, stoop, and crouch, but she can never climb ladders, ropes, or scaffolds, balance, or crawl. (Tr. 648.) He concluded that she can never reach over her head, handle items or finger them, but that she can occasionally reach in other directions and feel objects. (Id.) He noted, however, that all of these symptoms were based upon her subjective complaints. (Id.) He also found that her ability to push and pull was limited. (Id.) He found that claimant should not be placed in an environment with hazards, humidity, or vibration. (Tr. 649.)

[8] Claimant contends that Dr. Novack's opinion on her ability to drive was not entitled to the weight it was afforded, because at the hearing she testified that she can drive after her husband installed a special padded steering-wheel cover, which allows her to grip the wheel. (Doc. 20 at 8.) Even if the steering-wheel cover entirely resolved her grip-related issues, it does not explain her ability "to turn her neck to look in either mirror or [to] turn[] the wheel to make a turn when all upper extremity movement she states is very painful." (Tr. 643.)

her generalized symptom magnification and self-limitation. (Id.) Claimant has pointed to no objective medical evidence supporting her subjective allegations, and the ALJ here "provided an unusually thorough recitation of the reasons he found [claimant's] complaints of totally disabling limitations not credible." (Doc. 23 at 8.) Consequently, the ALJ's determination was supported by substantial evidence.

### C. Residual Functional Capacity

Claimant finally contends that the ALJ's residual functional capacity ("RFC") assessment was incorrect. (Doc. 20 at 9.) Specifically, claimant contends that the ALJ: (1) failed to inquire whether the vocational expert's testimony was consistent with the occupational information supplied by the Dictionary of Occupational Titles ("DOT"), (2) made inconsistent statements regarding claimant's depression, and (3) should have included certain of claimant's impairments in his hypothetical to the vocational expert. (Id. at 9-13.)

1. *Dictionary of Occupational Titles*

The ALJ asked the vocational expert what jobs claimant could perform if she could only *occasionally* use her arms and hands for reaching and handling, based upon the limitations imposed by her carpal

tunnel syndrome. (Tr. 744.) The vocational expert testified that claimant could work as a night guard or surveillance system monitor. (Tr. 744.) According to the DOT, however, a night guard must *frequently* reach and handle. (Tr. 329.) Claimant alleges that the ALJ should have inquired into whether the vocational expert's testimony was consistent with the DOT descriptions. (Doc. 20 at 10.) Based upon the discrepancy, claimant asserts that the ALJ's decision was in error. (Id.)

Under S.S.R. 00-4p, an ALJ is required to resolve conflicts between the vocational expert's testimony and the DOT. S.S.R. 00-4P, 2000 WL 1898704, *2-3 (Dec. 4, 2000). In this circuit, however, the "testimony of a vocational expert 'trumps' an inconsistent provision of the DOT." Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1990)). Consequently, the ALJ was entitled to rely upon the vocational expert's testimony. Id. Moreover, even if it was error to rely upon the expert's testimony regarding the requirements of the night guard position, the expert also testified that claimant could work as a surveillance system monitor. (Tr. 744.) Claimant does not contend that the expert's testimony regarding surveillance system monitors conflicted with the

15

hypothetical or the DOT. Accordingly, the ALJ's decision was supported by substantial evidence, even if the requirements of the night guard position conflicted with the vocational expert's testimony.

2. *Depression*

The ALJ found that claimant's depression was a severe impairment at step three of his analysis. (Tr. 351.) A severe impairment under the guidelines is one that significantly impacts work activities. 20 C.F.R. § 404.1520(c). Claimant contends that because the ALJ described her depression as a severe impairment at step three, it should give rise to work-related impairments at steps four and five. (Doc. 20 at 11.)

Instead of listing any work-related impairments, the ALJ found that

> [c]laimant's mental impairment has no effect on her ability to understand, remember, and execute complex instructions. . . . She appears to have no limitation on her social functioning and can relate appropriately to the public, supervisors, and workers. In addition, there is no evidence that claimant has failed to complete tasks in a timely manner due to deficiencies of concentration, persistence, or pace. She can handle repetitive job stress, and changes in routine job situations. She can pay attention and concentrate. Finally, there is no evidence that claimant has ever experienced episodes of deterioration or decompensation, each of extended duration. In this case, the functional limitations imposed by claimant's depression result in no more than a slight to moderate impairment of claimant's abilities to engage in work activity.

16

> Under this set of circumstances, it must be concluded that claimant's impairments, while they are "severe" impairments, do not preclude her from performing unskilled work.

(Tr. 353.) Although claimant frames this as an inconsistency in the ALJ's evaluation, that is not the case. The ALJ recognized that her impairments prevented her from returning to her prior skilled work, but he found that they did not prevent her from performing unskilled work. (Tr. 353, 355.) Accordingly, his determination at step five was consistent with his finding that claimant's depression was severe. See S.S.R. 85-15, 1985 WL 56857, *4-6 (1985).

3. *Hypothetical*

The vocational expert was presented with a series of hypothetical questions at the second hearing. (Tr. 737-47.) First, the ALJ stated:

> Assume that the Claimant is 46 years old, she has an AA degree, and she has the following impairments: She has bilateral carpal tunnel syndrome; cervical disc disease; and depression. Her residual functional capacity is as follows: She can do light work insofar as sitting, standing and walking is concerned. She can lift and carry 20 pounds occasionally and 10 frequently. She can occasionally use her left and right arms for reaching overhead and reaching in all directions and for handling and fingering. She has limited use of her left and right arm for pushing and pulling and she should avoid activities such as repetitive manual work and prolonged typing or keyboard activities. . . . Mentally, she can understand, remember and execute complex instructions.

17

> She can relate appropriately to the public to supervisors and to co-workers. She can handle routine job stress. She can handle changes in routine job situation[s], and she can pay attention and concentrate.

(Tr. 743-44.) He then asked the vocational expert whether claimant could perform her past relevant work, and the expert stated that she could not. (Tr. 744.) The ALJ asked what jobs claimant could perform, and the expert responded that she could be a night guard or surveillance system monitor. (Id.) The ALJ then enhanced the hypothetical, asking if adding in restrictions "against hazards such as heights and machinery or humidity or vibration" would change the expert's answer. (Tr. 745.) The expert replied that they would not. (Id.) Claimant's attorney then asked whether occasional flexing or extension or turning of the neck would change the answer, and the expert testified that it would not. (Id.) Finally, the attorney asked whether "unplanned instructions" or "unscheduled disruption[s]" which took claimant off task for hours at a time would change the answer. (Id.) The expert responded that such interruptions would prevent claimant from performing any jobs that he could cite. (Id.)

Claimant contends that the ALJ should have asked the vocational expert about her fatigue in his hypothetical. (Doc. 20 at 12.) Claimant's

18

attorney, however, explicitly asked the expert whether claimant could work in any job if she worked subject to "unscheduled disruption." (Tr. 745.) Although claimant's counsel did not explicitly ask whether her fatigue would limit her, the vocational expert construed it as such. The expert testified that if claimant could not work for several hours over the course of the week, "an employer would not tolerate that." (Tr. 746.) As the expert's testimony covered the question, the ALJ's failure to ask it was harmless.

Furthermore, an ALJ may omit from his hypothetical any allegations he does not accept as true. Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). An alleged limitation that is not supported by substantial evidence need not be included in an ALJ's hypothetical. Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir. 1987). Here, the ALJ agreed with Dr. Novack that claimant magnified the severity of her symptoms. (Tr. 354.) As the ALJ did not credit claimant's subjective complaints, he was not required to include fatigue--a subjective complaint--in his hypothetical to the vocational expert.[9]

---

[9] In addition, claimant contends that the ALJ failed to include her lower back pain, fibromyalgia, and chronic pain syndrome in his hypothetical to the vocational expert, so the hypothetical was flawed. (Doc. 20 at 12.) As noted above, claimant

## III. CONCLUSION

For all of the reasons explained above, the ALJ's decision is supported by substantial evidence and should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this <u> 1st </u> day of December, 2008.

<u>/s/ G.R. SMITH</u>
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

never relied upon these diagnoses as impairments in any of her disability filings. Consequently, the ALJ's failure to include them was not error.